882 So.2d 1221 (2004)
STATE of Louisiana, Appellee
v.
Lemarcus MORRIS, Appellant.
No. 38,928-KA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 2004.
*1222 Louisiana Appellate Project, by Carey J. Ellis, III, for Appellant.
Paul J. Carmouche, District Attorney, Hugo Holland, Jr., J. Thomas Butler, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS and MOORE, JJ.
MOORE, J.
LeMarcus Morris[1] was indicted on two counts of first degree murder arising from an armed robbery with two fatal shootings in northern Caddo Parish. Pursuant to a plea bargain, he pled guilty to one count of first degree murder, one count of second degree murder and one count of armed robbery, reserving his right to appeal the *1223 denial of his motion to suppress his recorded statement. As part of the plea bargain, Morris received concurrent life sentences for the homicide charges and a consecutive 20-year hard-labor term for the armed robbery charge. He now appeals, advancing one assignment of error through counsel and five assignments pro se. For the reasons expressed, we affirm.

Factual Background
On the evening of December 14, 2001, Morris and his cousin, DeMarcus Morris (hereinafter "Mark"), along with 16-year-old Willie Johnson, planned to rob Strickland's Grocery on Hwy. 71 in Hosston, Louisiana. Mark was already armed; after rounding up two more handguns (one from a relative and the other from an abandoned trailer), the three put on hooded jackets and went to Strickland's about 10 p.m. A witness, David Green, saw the men standing outside the store; although they had hoods on their heads and pantyhose over their faces, he recognized them from the neighborhood. He asked what they were doing; they replied they were going to rob the place and warned him to leave "if he knew what was good for him." Green left and went to tell one of Johnson's relatives what was afoot.
While Johnson stood lookout, Morris and Mark entered the store. Mark fired several rounds at the cashier, Allen Bounds, hitting him twice in the face and once in the chest. Morris fired two shots, but neither hit the victim. The store's owner (and Bounds's aunt), Cynthia Rangel, heard the gunfire and emerged from the residential area in the back of the building. Mark shot her once in the neck.
Ms. Rangel's son, Chris, was also in the rear of the store when he heard the gunshots. He came out and saw one of the men running out while the other struggled to remove the cash register from the counter. After the second man left, Chris grabbed a pistol from under the counter and ran outside, but the two men had already left. He then called 911. Ms. Rangel was pronounced dead at the scene; Bounds was DOA at North Caddo Memorial Hospital.
The three robbers fled to the abandoned trailer where they changed clothes and divided the contents of the cash register. They also paid at least two people to keep silent about the robbery.
David Green, who had seen the three men standing outside the store shortly before the robbery, gave their names to sheriff's deputies. Soon after receiving this information, Deputies Bradford and Morgan found Johnson hiding under a bed at his grandmother's house in Hosston. In the presence of his father, Johnson gave a statement admitting that he, Mark and Morris had planned and carried out the robbery. Early the next morning, Deputies Morgan, Long and Duncan spotted Mark and Morris walking along Pine Hill Road in Shreveport. Both suspects fled; Dep. Morgan ran down Morris in a wooded field, arrested him and gave him his Miranda rights. A short while later, Dep. Long arrested Mark at his mother's house. Both suspects were taken to the Vivian Substation for questioning. Both gave recorded statements admitting their roles in the armed robbery.
Morris was indicted on two counts of first degree murder. He filed a motion to suppress his recorded statement, which the district court denied after a hearing in October 2003. He then agreed to plead guilty to an amended indictment charging him as a principal to the first degree murder of Ms. Rangel and second degree murder of Bounds, and with the armed robbery of Bounds. Morris reserved his right to appeal the denial of his motion to suppress, pursuant to State v. Crosby, 338 So.2d 584 (La.1976). The district court *1224 sentenced him in accordance with the plea agreement, to concurrent life terms for the homicides and a consecutive term of 20 years at hard labor, without benefits, for the armed robbery. He has appealed.

Discussion: Motion to Suppress
Through appellate counsel, Morris urges that he did not knowingly waive his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and that his statement was involuntary because of psychological coercion and false promises made by his interrogators, in violation of Mincey v. Arizona, 434 U.S. 1343, 98 S.Ct. 23, 54 L.Ed.2d 56 (1977), and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). He contends that he was taken into custody at 8:20 a.m. and interrogated for four hours before signing a waiver of rights form at 12:15 p.m.; he was handcuffed during this time and denied water and access to a telephone or toilet; he was never advised that his statement could be used against him, and in fact was promised he could get less than life in prison if he gave a statement. He urges that the totality of these facts made his statement inadmissible. By pro se brief, Morris reiterates these claims, adding that his arrest was illegal because deputies did not obtain a warrant and lacked probable cause to arrest; he actually asserted his Miranda rights but officers continued to question him; and as a 17-year-old, inexperienced with the legal system, he did not grasp the significance of waiving his rights and incriminating himself.
The state responds that Morris's own testimony at the motion to suppress undermines most of his factual claims, particularly that he was interrogated for hours before he signed the waiver at 12:15 p.m. The state also cites the detectives' testimony that the four-hour delay occurred while they were questioning Mark, the other suspect. Finally, the state urges that nothing in Morris's recorded statement or the testimony adduced at the hearing supports the claim that deputies coerced his statement.
The Louisiana Supreme Court recently summarized the law governing the admissibility of confessions:
As a general matter, before a confession may be admitted into evidence, the State has the burden of affirmatively showing that it was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements, or promises. La. R.S. 15:451; State v. West, 408 So.2d 1302, 1307 (La.1982); State v. Dewey, 408 So.2d 1255, 1258 (La.1982). Furthermore, if the statement was made during custodial interrogation, the state must show that the defendant was advised of his constitutional rights. Miranda v. Arizona, [supra]; State v. Petterway, 403 So.2d 1157 (La.1981); State v. Sonnier, 379 So.2d 1336, 1355 (La.1979). The admissibility of a confession is a question for the trial judge, whose conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility should not be overturned on appeal unless they are not supported by the evidence. State v. Jackson, 381 So.2d 485, 487 (La.1980).
State v. Thibodeaux, 98-1673 (La.9/8/99), p. 6, 750 So.2d 916, 922.
Morris's most developed claim is that he was interrogated for four hours before he signed the waiver of rights form and gave his statement. The record, however, is devoid of evidence to this effect. Prior to the arrest, Dep. Morgan had to chase Morris through a wooded field; although winded from the pursuit, he immediately gave Morris his Miranda rights *1225 from memory. On direct examination by his own counsel, Morris stated that deputies initially asked him where the other gun was, but he denied that they interrogated him. Dep. Bradford testified that while he and Dep. Long were questioning Mark, they placed Morris in the break room for several hours. Morris testified that during this time he was refused food, water and use of the restroom; however, he could not recall which deputies denied his requests. By contrast, Dep. Duncan testified that officers normally offer suspects "water, coffee, Coke, restroom if they need it," but Morris never asked for any of these and did not appear uncomfortable. Dep. Long narrated a videotape of the area around the break room, showing that the restroom and a water fountain were only steps from the door. He also testified that Morris received water in the break room and was allowed to use the restroom before they left the substation.
Morris also contends that his waiver was vitiated by promises. On direct examination, he conceded that in his recorded statement, he explicitly denied that he had been "promised anything or threatened." However, he testified that he was responding only to the second part of the question; he had not been threatened, but he had been promised less than a life sentence if he gave a statement. By contrast, Dep. Bradford testified there was never any discussion about possible penalties for the crimes, and there is not one scintilla of record evidence to support Morris's claim.
Morris's other major factual claim is that officers arrested him without a warrant and without probable cause, thus tainting the statement he subsequently made. However, an eyewitness had seen Morris and his two associates standing outside the store shortly before the crimes, had spoken to them and learned of their intent to commit a robbery, and had provided the suspects' names to sheriff's deputies; one of the suspects, Willie Johnson, had already given a statement incriminating Morris; and Morris bolted at the sight of the deputies' car. These facts constituted probable cause, as they were within the arresting officers' knowledge, were based on reasonable and trustworthy information, and would justify a man of average caution in the belief that Morris had committed an offense. La. C. Cr. P. art. 213(3); Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Ceaser, XXXX-XXXX (La.10/21/03), 859 So.2d 639.
The rest of Morris's factual claims are patently insubstantial. Morris testified that prior to his arrest, he had smoked "eight or nine blunts," thus impairing his capacity to waive his Miranda rights. In his recorded statement, however, he denied smoking anything "more than cigarettes," and Dep. Bradford testified that he did not appear intoxicated or impaired. Because Morris had reached the age of 17, he was not entitled to special juvenile procedures that he suggests were required, such as having a parent or adult guardian present during questioning. La. Ch. C. 804(1). Dep. Bradford testified that Morris did not ask to use the phone, and it was not denied. Contrary to Morris's suggestion, officers are not required to offer the use of a phone. La. C. Cr. P. art. 230; State v. Cripps, 259 La. 403, 250 So.2d 382 (1971).[2] Finally, although he vigorously urges by pro se brief that he asserted his Miranda rights, there is no evidence that Morris ever articulated any desire to have counsel present, and much less with the degree of clarity that a reasonable officer in the circumstances would *1226 understand the statement to be a request for an attorney. State v. Payne, XXXX-XXXX (La.12/4/02), 833 So.2d 927.
The district court heard all the witnesses describe what occurred that morning from the time Morris was apprehended until he was taken to be locked up. Specifically, the court heard the officers testify as to when and where Morris was advised of his Miranda rights and the other facts that might influence him to make a statement. The court obviously credited those officers' testimony more than Morris's claims. The finding that Morris knowingly and voluntarily waived his rights is supported by the evidence and will not be disturbed. State v. Thibodeaux, supra.

Ineffective Assistance of Counsel
By two of his pro se assignments of error, Morris urges his convictions and sentences should be reversed because of ineffective assistance of counsel. Specifically, he contends that trial counsel failed to investigate or subpoena David Green, who allegedly recanted his statement to police and denied he saw Morris and the other men standing outside of Strickland's before the crime; failed to investigate or subpoena a voice identification expert to testify that the voice on the recorded statement was not really Morris's; and failed to file a motion to quash the indictment, which was allegedly defective because it lacked the indorsement of the grand jury foreperson.
As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Green, 27,652 (La.App. 2 Cir. 1/24/96), 666 So.2d 1302, writ denied, 97-0504 (La.10/31/97), 703 So.2d 14. Only when the record on its face discloses sufficient evidence to decide the issue of ineffective assistance when raised by assignment of error should the issue be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983).
Under the standard for ineffective assistance of counsel set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by Louisiana courts in State v. Washington, 491 So.2d 1337 (La.1986), a reviewing court must reverse a conviction if the defendant establishes (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. State v. Legrand, XXXX-XXXX (La.12/3/03), 864 So.2d 89. In addition, in the context of a guilty plea, the defendant must prove that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); State v. Washington, supra.
Morris alleges that Green signed an affidavit on April 16, 2002, recanting his prior statement to deputies. However, the affidavit is not attached to his brief, nor has it been filed with the district court in any post trial filing. Even if Green really did execute such an affidavit, it would not alter the fact that Morris himself, as well as Mark and Johnson, all gave statements admitting they were at the scene; Morris also admitting giving money to at least two persons to keep quiet about the robbery. The autopsy reports corroborated Morris's account of how many shots were fired into each victim, and deputies recovered the stolen cash register from the abandoned *1227 trailer, precisely where Morris said it would be found.
Morris also alleges that trial counsel did not subpoena a voice identification expert to show that the voice on the tape was not really his. There is no evidence that he ever told his lawyer that the tape was fraudulent or altered, and he did not contest its authenticity at the hearing on the motion to suppress.
Finally, Morris urges that counsel was ineffective for failing to quash the indictment, which he alleges was defective because it was not indorsed by the jury foreperson. However, a simple inspection of the original indictment, filed on February 12, 2002, shows the indorsement required by La. C. Cr. P. art. 382 A. State v. Mills, 505 So.2d 933, 941 (La.App. 2 Cir.), writ denied, 508 So.2d 65 (1987). Moreover, a defendant is permitted to enter a guilty plea to a crime nonresponsive to the original indictment when such a plea is acceptable to the district attorney. La. C. Cr. P. art. 487 B. If the district attorney files an amended indictment to conform to a plea agreement, the amended indictment need not be indorsed by the grand jury foreperson. State v. Davis, 614 So.2d 270 (La.App. 3 Cir.1993).[3]
Evidence of Morris's involvement in the homicides and armed robbery was overwhelming. Counsel made a tactical decision for his client to plead guilty under terms that spared him the risk of two death penalties. On this record it does not appear that counsel's conduct was unprofessional or that but for his conduct, Morris would have rejected the plea agreement and insisted on proceeding to capital trial. State v. Washington, supra. These assignments of error lack merit.

Other Pro Se Assignments
By his fourth pro se assignment of error, Morris argues the district court erred in failing to conduct an inquiry into whether he had conflict-free counsel. He urges that "all three co-defendants in this case made statements against each other," so their defenses would be antagonistic, and yet the court allowed them to be represented by the indigent defender board. He urges that this created an actual conflict of interest, for which the court was obligated to appoint new counsel under La. R.S. 15:145 B(2)(b).
Prior to arraignment, all three men were codefendants in docket No. 218,901. On the state's motion and amended motion, the court found all three to be indigent and appointed individual counsel for them. They were individually represented at the preliminary examination on January 15, 2002. Morris has supplied no proof that all three attorneys were employed by the IDB. On February 12, 2002, Morris was individually indicted and the cases were severed; at this point, Mark and Johnson were not technically codefendants. Apart from the general allegation that each man implicated the others, Morris has made no showing that his appointed counsel was hindered or compromised by conflict of interest. This assignment lacks merit.
By his second pro se assignment, Morris urges the district court erred in imposing an excessive sentence and in failing to comply with La. C. Cr. P. art. 493. However, the defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea. La. C. Cr. P. art. 881.2 A(2); State v. Young, 96-0195 (La.10/15/96), 680 So.2d 1171. The terms of Morris's agreed-upon *1228 sentence were clearly stated in the record, and Morris replied that they had been explained to him. This assignment lacks merit.
By his third pro se assignment, Morris urges he should be entitled to withdraw his guilty plea because of his "legal innocence." In support he cites United States v. Salgado-Ocampo, 159 F.3d 322 (7th Cir.1998). Louisiana law, however, permits the withdrawal of a guilty plea "at any time before sentence," La. C. Cr. P. art. 559, only upon a showing that it was not free and voluntary. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Nuccio, 454 So.2d 93 (La.1984). Morris did not file a timely motion to withdraw his guilty plea and has made no showing that his plea was anything other than free and voluntary. State v. Looney, 31,604 (La.App. 2 Cir. 2/24/99), 728 So.2d 987. Moreover, by pleading guilty he waived the right to challenge the sufficiency of the evidence to convict him. State v. Bourgeois, 406 So.2d 550 (La.1981); State v. Jefferson, 36,562 (La.App. 2 Cir. 1/29/03), 837 So.2d 733, writ denied, XXXX-XXXX (La.11/7/03), 857 So.2d 516. This assignment lacks merit.

Conclusion
We have reviewed the entire record pursuant to La. C. Cr. P. art. 920(2) and find nothing we consider to be error patent. LeMarcus Morris's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The name sometimes appears as "LaMarcus" in the record.
[2] Overruled on other grounds in State v. Lovett, 345 So.2d 1139 (La.1977).
[3] Reversed on other grounds, 93-0599 (La.4/11/94), 634 So.2d 1168.