935 So.2d 261 (2006)
STATE of Louisiana, Appellee
v.
Richard Thomas PIGFORD, Appellant.
No. 39,306-KA.
Court of Appeal of Louisiana, Second Circuit.
June 19, 2006.
*263 Louisiana Appellate Project, by James E. Beal, Jonesboro, Paula C. Marx, Lafayette, for Appellant.
Richard Thomas Pigford, pro se.
Paul J. Carmouche, District Attorney, Sean D. Miller, Tommy J. Johnson, Assistant District Attorneys, for Appellee.
Before WILLIAMS, STEWART and MOORE, JJ.
STEWART, J.
Following our reversal of the defendant Thomas Pigford's conviction and sentence for possession of marijuana with the intent to distribute in State v. Pigford, 39,306 (La.App. 2d Cir.1/26/05), 892 So.2d 724, the Louisiana Supreme Court reversed our ruling, reinstated the conviction and sentence, and remanded the case for our consideration of the assignments of error pretermitted by our earlier ruling. For the reasons that follow, we affirm the defendant's conviction and sentence.

*264 FACTS
On September 25, 2000, a computer weight monitoring station set up on I-20 by the state police registered an eastbound Volvo eighteen-wheeler 3000 pounds over the state weight limit of 80,000 pounds. The vehicle, driven by the defendant, was directed to pull over into the nearest weight station. Carol Pigford, the defendant's wife and the registered owner of the tractor, was a passenger in the vehicle. The record does not establish the registered owner of the trailer. The trailer was not sealed, but was locked only with a padlock. The defendant had the key to the padlock.
The truck was weighed on the stationary scales at the weigh station, and again determined to be 3,000 pounds overweight. The defendant was directed to pull over and stop the truck, and to get out with his papers. Sergeant Brierre Thomas, with the Department of Transportation Weights and Standards Unit, and Deputy Danny Williams, a K-9 officer with the Caddo Parish Sheriff's Office, interviewed the defendant. The defendant told them he was traveling to New York; however, the bill of lading showed the defendant was hauling a load of grapes from California to Pennsylvania.
Because they were concerned about the discrepancy in the destination and cargo given by the defendant and the destination on the bill of lading and the fact that the defendant seemed to be traveling out of his way to get to New York, Sergeant Thomas and Deputy Williams asked the defendant to open the back of the trailer, so they could see what he had as cargo. The defendant refused to open the trailer, telling the officers he was a member of the NAACP, and that he knew he had a right to refuse to allow the search. In fact, at the hearing on the defendant's motion to suppress, Sergeant Thomas admitted that he and Deputy Williams had no authority to make the defendant open the trailer.
Immediately after the defendant refused to open the trailer, Sergeant Thomas called Peggy Adley, an agent with the Public Service Commission. She was across the interstate at the westbound weigh station. Sergeant Thomas testified that he called Adley because she would need to know what was in the trailer, check Pigford's single state registration and insurance, and inspect his load to see if it matched his bill of lading. Sergeant Thomas also noted that the fact that company the defendant drove for was not a familiar company aroused suspicion. Sergeant Thomas told Officer Adley that he had a trucker who was refusing to open the trailer, and he had conflicting statements about the load and the destination.
Agent Adley arrived in a couple of minutes and inspected Pigford's papers. Afterwards, she told him that she had the right to inspect the trailer without his consent, so he unlocked the padlock and opened the doors. The trailer contained a load of boxes of grapes, stacked nearly to the top of the trailer. Agent Adley did not inspect the load, but asked Sergeant Thomas to do so. Sergeant Thomas climbed up onto the back of the trailer and looked at the load. As Sergeant Thomas inspected the load, he either saw or felt a large package sitting on top of the boxes of grapes, less than an arm's length from the back end of the load. The package was wrapped in clear plastic wrap and duct tape, and was about a foot wide and six-and-a-half to seven feet long. The package was not visible until Sergeant Thomas got up onto the back of the trailer.
Sergeant Thomas asked the defendant about the package, and the defendant told him he didn't know anything about it. Carol Pigford also denied knowing anything about the package. Sergeant Thomas *265 and Deputy Williams pulled the package down. One of the bundles in the package was opened up, revealing marijuana. The total weight of marijuana was approximately 52 pounds, with a street value of $52,000. The defendant and his wife were arrested for possession of marijuana with the intent to distribute. After the arrest, the defendant's bill of lading was determined to be in good order. No fingerprints were found on the package.
Prior to the trial, Pigford filed a motion to suppress that was denied by the trial court. During the time leading up to the trial, Pigford retained and fired three different attorneys before deciding to represent himself in defense of the charges against him. The trial court strongly warned the defendant that he was facing a serious felony charge and that he needed counsel. In fact, the trial court offered to continue the matter to allow the defendant to consider getting new counsel.
Nonetheless, Pigford responded by stating that he still wanted to represent himself. The trial court then advised the defendant that he would be tried by a jury unless he specifically waived the right, and that he had a right to subpoena witnesses. After the trial court further advised the defendant of the delays in subpoenaing witnesses, he was allowed to represent himself.
On November 18, 2002, the defendant made an oral motion to be appointed counsel, which was argued and denied by the trial court. The trial court advised the defendant as to the proper procedure in conducting a jury voir dire. After several delays, trial began on November 19, 2002.
The transcript reveals that Pigford put forth a more than adequate defense for himself, displaying a significant level of confidence and proficiency in using the rules of evidence to impeach witness testimony, assert objections, and effectively cross examine witnesses. Pigford attacked the credibility of the officers involved, and argued that the state's evidence could not exclude the possibility that the marijuana was put in the trailer by someone who helped load the trailer.
On cross examination of Sergeant Thomas, Pigford established that the load of grapes came through a broker. He also established that an overweight load was a common occurrence, usually involving writing a citation and letting the trucker leave. The defendant also established that although Sergeant Thomas had just testified that the marijuana was in "plain view," it was actually on the top of the load of grapes, two or three feet above his head, and was discoverable only by reaching over with his hand and feeling around.
The defendant got Deputy Williams to admit that it was possible that someone loading the hauler could have placed the marijuana into the truck while the defendant was sorting out the paperwork, and someone else could have taken the marijuana off at the other end, and "... the defendant would never have known what he was carrying." The defendant also got Williams to admit that he did not remember if he ever asked the defendant if he watched the truck being loaded.
The next witness for the state was Agent Adley, enforcement agent for the Louisiana Public Service Commission. On cross examination, the defendant, despite objections by the state, got Agent Adley to admit that the package of marijuana was not in plain view and was not visible to someone standing on the ground. The defendant also got Agent Adley to acknowledge that she found nothing wrong with his paperwork.
The defendant chose not to return to finish the trial, but fled the state instead. The trial court completed the trial in the *266 defendant's absence. The jury convicted the defendant as charged. The defendant was represented by counsel during his sentencing where he was sentenced to eight years at hard labor. Pigford then filed a pro se motion for new trial.

DISCUSSION

Motion To Suppress/Illegal Search
The defendant argues the police officers were not authorized by the statute to perform the inspection on behalf of the Public Service Commission, and he argues that the officers went beyond the inspection when they reached up on top of the stack of grapes and felt the package of marijuana. The state argues the marijuana was found in plain view during a valid inspection on behalf of the Public Service Commission.
La. R.S. 45:163(C)(1) provides:
C. (1) The commission shall be charged with the duty of policing and enforcing the provisions of R.S. 45:161 through R.S. 45:178. Its duly appointed officers shall have authority to make arrest for violations of any of the provisions of R.S. 45:161 through 45:178, orders, decisions, rules and regulations of the commission, or any part or portion thereof, and to serve any notice, order or subpoena issued by any court, the commission, its secretary or any employee authorized to issue same, and to this end shall have full authority throughout the state.
The issue presented with this assignment, the authority of the Public Service Commission to conduct warrantless searches of trailers, appears to be of first impression with the appellate courts. The matter is made somewhat easier by the fact that the defendant is not directly challenging the authority of the Public Service Commission to conduct the search, but only its authority to delegate the search to other law enforcement officers.
The defendant does not dispute that his tractor-trailer rig was validly stopped for hauling a load in excess of the state's load limits. During the stop, the defendant appeared nervous and gave information to the deputy sheriff and weights and standards officer that conflicted with the defendant's bill of lading, both as to the nature and the destination of the cargo. The officers asked for permission to check the defendant's load. There is no dispute that the defendant refused to allow the officer to inspect the trailer's cargo.
Sergeant Thomas contacted Agent Adley and advised her of his concerns that the defendant's information about his cargo and destination did not match his bill of lading. Pursuant to her authority in La. R.S. 45:163, Agent Adley ordered the defendant to unlock the trailer.
The defendant, in his brief, does not dispute that the law does give Public Service Commission the right to conduct warrantless inspections of the contents of commercial trucks using Louisiana highways to confirm they have all the required registration, insurance, bills of lading, and that the cargo conforms with the documentation.
The U.S. Supreme Court has long held that legislation authorizing warrantless administrative searches of commercial property does not necessarily violate the Fourth Amendment. This greater latitude to conduct warrantless inspections of commercial property to address safety concerns reflects the fact that the owner of commercial property has a lesser expectation of privacy in property involved in public commerce. Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981).
*267 La. R.S. 45:163(C)(2) makes it clear that this authority to order a driver to submit to inspection requires a "... reasonable belief that the vehicle is being operated in violation of any provisions of R.S. 45:161 through R.S. 45:178." The purpose of the inspection of the cargo is limited to "... comparing the same with bills of lading, waybill, invoice or other evidence of ownership or of transportation for compensation." As testified to by Agent Adley, the Commission's concern is when a driver has the authority and insurance to carry a declared cargo, but is actually carrying something entirely different. She further testified about opening trucks claimed to be carrying produce and instead finding illegal aliens.
Because of the conflicts in the defendant's statements and his bill of lading, it is clear Agent Adley had a reasonable belief of a possible violation of the law, sufficient to allow her to order an inspection of the contents of the trailer. The defendant argues, without citing any applicable authority, that Agent Adley could not delegate her authority to inspect the load to Sergeant Thomas. The obvious concern is that law enforcement officers would use the right for limited inspection as a pretext for a full contraband search. However, the record reveals that the reason Agent Adley had Sergeant Thomas conduct the search had nothing to do with any pretext by the law enforcement officers to conduct a warrantless full search of the tractor and trailer. Agent Adley testified that after more than 20 years on the job, she was not as ambulatory as she once was, and had difficulty in climbing into trailers to conduct inspections. She merely needed assistance in confirming what cargo was in the trailer. At her request, Sergeant Thomas was lawfully on the trailer to check the cargo.
Further, there is no indication in the record that Sergeant Thomas attempted to go beyond just checking the cargo. No boxes of grapes were ever moved, and Thomas never went beyond the end of the trailer. Although there is a dispute in the evidence as to whether the over six-foot-long bundle of marijuana was in plain view from the ground or only while standing in the trailer, there is sufficient evidence in the record to find that the marijuana was either in plain view or in plain feel during Sergeant Thomas' limited inspection.
The plain view doctrine is an exception to the warrant requirement. State v. Ray, 471 So.2d 831 (La.App. 2d Cir.1985), writ denied, 475 So.2d 364 (La.1985). The plain view doctrine renders a warrantless search reasonable: (1) if the police officer is lawfully in the place from which he views the object; (2) where the object's incriminating character is immediately apparent; and (3) when the officer has a lawful right of access to the object. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112 (1990); State v. Nolen, 29,284 (La.App. 2d Cir.4/4/97), 691 So.2d 379; State v. Cohen, 549 So.2d 884 (La.App. 2d Cir.1989), writ denied, 559 So.2d 135 (La.1990). In the present case, Sergeant Thomas was lawfully standing at the back end of the trailer conducting an inspection. He found the large bundle of marijuana within easy arm's reach from the back end of the load of grapes. Whether Sergeant Thomas first saw or felt the bundle is not relevant, because the incriminating character of the bundle was obviously and immediately apparent to the officer by either sight or feel. The fact that the large bundle was wrapped in clear cellophane and looked like marijuana made it immediately apparent to the officer that it was clearly not a box of grapes as declared by the defendant's bill of lading. Moreover, we find that the authority to *268 inspect a trailer's cargo under La. R.S. 45:163(C) would also include the right to inspect any cargo found in the trailer that is not listed on the vehicle's bill of lading, including the six-foot-long bundle found by Sergeant Thomas.
These assignments are therefore without merit.

Sixth Amendment Right To Counsel
In his pro se supplemental brief, the defendant argues he was forced to represent himself, and the trial court erred in allowing him to represent himself at trial after he fired three different attorneys. The state did not address the defendant's supplemental assignments of error.
The Sixth and Fourteenth Amendments of the United States Constitution guarantee that a person brought to trial must be afforded the right to assistance of counsel before he can be validly convicted and punished by imprisonment. The Sixth Amendment further grants to an accused the right of self-representation. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Carpenter, 390 So.2d 1296 (La.1980).
Because an accused managing his own defense "relinquishes ... many of the traditional benefits associated with the right to counsel," he "must `knowingly and intelligently' forego those relinquished benefits" in order to represent himself. Faretta, supra, 95 S.Ct. at 2541. The state has the burden of proving that a defendant knowingly and intelligently waived his constitutional right to the assistance of counsel. State v. Brooks, 452 So.2d 149 (La.1984). The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); State v. Harper, 381 So.2d 468 (La.1980).
Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Faretta v. California, supra, 95 S.Ct. at 2541. Thus, before a trial judge can allow a defendant to represent himself, he must determine whether defendant's waiver of counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal. State v. Hegwood, 345 So.2d 1179 (La. 1977); State v. Nevels, 457 So.2d 1254 (La.App. 1st Cir.1984); State v. Smith, 479 So.2d 1062 (La.App. 3d Cir.1985). The trial court must assess a defendant's literacy, competency, understanding, and volition before accepting the defendant's waiver of counsel in order to represent himself. State v. LaFleur, 391 So.2d 445 (La.1980).
In the present case, the record clearly shows that prior to allowing the defendant to represent himself, the trial court warned the defendant of the dangers of representing himself and the availability of appointed counsel. Next, the trial court questioned the defendant to assess his literacy and understanding of the consequences of his decision. In response, the defendant advised the trial court that he had a master's degree, and had taught 15 years in high schools and community colleges. The trial court offered to give the defendant time to reconsider getting additional counsel. The defendant refused the offer.
*269 Nothing in the record supports the defendant's argument that he was forced to represent himself, or that the trial court allowed him to represent himself without adequately ascertaining that he understood the consequences of representing himself. To the contrary, the record shows the defendant understood the risks and consequences involved in representing himself. The biggest mistake the defendant made in representing himself at trial was deciding to flee the courtroom and the state in the middle of his trial. This action had no relationship to the trial court's determination that he was competent to represent himself.
This assignment of error is completely without merit.

CONCLUSION
Based on the above and the foregoing, we affirm the defendant's conviction and sentence.
AFFIRMED.