966 So.2d 727 (2007)
STATE of Louisiana, Appellee
v.
Makarios Raymont BROWN, Appellant.
Nos. 42,188-KA, 42,189-KA, 42,190-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 2007.
*736 W. Jarred Franklin, for Appellant.
*737 Paul J. Carmouche, District Attorney, Lea R. Hall, Jr., Edwin L. Blewer, Catherine M. Estopinal, Assistant District Attorneys, for Appellee.
Before WILLIAMS, CARAWAY and DREW, JJ.
WILLIAMS, J.
This appeal involves three consolidated cases. In the first matter, Docket No. 42,188-KA, the defendant, Makarios Raymont Brown, was charged by bill of information with illegal use of a weapon during a crime of violence, a violation of LSA-R.S. 14:94(F), and possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1. The defendant pleaded guilty as charged. He was adjudicated a third felony offender upon his conviction for illegal use of a firearm during a crime of violence and was sentenced to serve 40 years in prison at hard labor without benefit of parole, probation or suspension of sentence. With regard to the conviction for possession of a firearm by a convicted felon, the defendant was sentenced to serve 15 years in prison without benefit of parole, probation or suspension of sentence and ordered to pay a fine of $1,000.
In the second matter, Docket No. 42,189-KA, the defendant was charged by bill of information with possession with intent to distribute a Schedule II controlled dangerous substance ("CDS"), a violation of LSA-R.S. 40:967(A)(1) and possession of a firearm by a convicted felon. Following a bench trial, the defendant was found guilty as charged. The defendant was adjudicated a third felony offender with regard to the conviction for possession of a Schedule II CDS with intent to distribute. He was sentenced to serve 60 years in prison at hard labor without benefit of parole, probation or suspension of sentence. With regard to the conviction for possession of a firearm by a convicted felon, the defendant was sentenced to serve 15 years in prison at hard labor without benefit of parole, probation or suspension of sentence and was ordered to pay a fine of $1,000.
In the third matter, Docket No. 42,190-KA, the defendant was charged by bill of information with illegal carrying of weapons while in possession of a CDS, a violation of LSA-R.S. 14:95(E), and possession of a firearm by a convicted felon. After a jury trial, the defendant was found guilty as charged. He was adjudicated a second felony offender with regard to the offense of possession of a firearm by a convicted felon and was sentenced to serve 30 years in prison at hard labor without benefit of parole, probation or suspension of sentence. On the conviction for illegal possession of weapons while in possession of a CDS, the defendant was sentenced to serve 10 years in prison at hard labor without benefit of parole, probation or suspension of sentence.
The trial court ordered all of the sentences to be served consecutive to each other, but concurrently with a misdemeanor conviction for battery of a police officer in another case. For the following reasons, we affirm the defendant's convictions and sentences.

FACTS
Docket No. 42,188-KA
On February 16, 2003, the defendant and his wife, Tonya Brown, had an altercation at a party celebrating their first wedding anniversary. Leaving the party in separate vehicles, both the defendant and Mrs. Brown returned to their home, continued the dispute, and the defendant retrieved his Mac-90 assault rifle. The defendant had angry words with Eric and Ebony Leftridge, who were in the home at the time of the dispute, and Mr. Leftridge called Mrs. Brown's brother, *738 Stephen Lowe, because he was concerned about her safety. The defendant became angry when Mr. Lowe arrived because he did not want anyone interfering with his domestic affairs, so he again armed himself with the Mac-90 assault rifle. As Mr. Lowe ran out of the house, the defendant followed and fired more than one shot in the direction of Mr. Lowe. Mrs. Brown's mother, Christine Lowe, informed the defendant that she had called 911, and he fled the scene. After being pursued by law enforcement, the defendant crashed his vehicle into a utility pole and abandoned the car. The defendant was taken into custody after Mrs. Brown alerted law enforcement that the defendant was hiding in the laundry room of their home. When law enforcement arrived, the defendant was found hiding in the attic.
Docket No. 42,189-KA
During the early morning hours of April 6, 2003, Shreveport Police officers Daniel Denby and L.E. Bonner conducted a traffic stop on the defendant, who was driving a 1979 gray Chevrolet Suburban westbound on Martin Luther King Drive in Shreveport, after observing him repeatedly cross the double yellow lines. Officer Denby testified that this area of town was considered a "high crime area" and was known for drug activity. The defendant had no driver's license or other photographic identification. He identified himself as "Trumond Brown" and gave what was later determined to be a false date of birth. As the defendant was reaching into the glove compartment of the vehicle, Officer Denby observed a clear plastic bag containing a white, powdery substance and an open container of alcohol. He also saw a clear plastic bag containing a vegetable substance that appeared to be marijuana in the ashtray of the vehicle. Officer Denby asked the defendant to step out of the vehicle so that he could pat him down for officer safety. During the pat-down, Officer Denby felt a large bundle of cash in the defendant's front left pocket. The officer could also detect the odor of alcohol on the defendant's breath. The defendant refused to submit to field sobriety tests. Officer Denby placed the defendant under arrest for suspicion of driving while intoxicated, put him in the back of the patrol unit and advised him of his Miranda rights.
Officer Denby returned to the defendant's vehicle to retrieve the open container of alcohol. He testified that upon closer inspection, it was very apparent that the vegetable substance in the plastic bag was marijuana. Officer Denby then exited the vehicle and called the K-9 officer and his supervisor. In the meantime, Officer Denby asked the defendant if there was anything inside the vehicle that law enforcement should know about, such as weapons or narcotics. The defendant stated that he had borrowed the vehicle from his mother and that he did not know of anything being inside the vehicle. Officer Denby testified that the defendant was crying and was very evasive in his answers. He also testified that the defendant admitted that he had been drinking. Once the K-9 unit arrived and the dog alerted the officers to the presence of narcotics inside the vehicle, the vehicle was searched. During the search, Officer Denby discovered 19.75 grams of powder cocaine inside the glove compartment, 1 gram of marijuana in the ashtray and a loaded Browning pistol and digital scales underneath the driver's seat. In addition, $2,696 was recovered from the defendant.
Once the defendant was taken to the police station, he admitted that "Trumond" was not his real name, but he refused to provide his real name. However, another officer recognized the defendant during *739 the booking process and compared fingerprints to confirm his identity.[1]
Docket No. 42,190-KA
On May 25, 2005, Agents Chad Denham and John Witham were doing a "corner check" as part of their duties with the Caddo/Shreveport Narcotics Task Force.[2] On this particular evening, Agents Denham and Witham were driving around the intersection of Norton and Ester Streets when they saw the defendant and two other men in front of a residence at the corner of Norton Street. They noticed the defendant walking away from the two other men as they drove closer to the group, and that the defendant began moving faster as they approached. They observed the defendant pulling something out of his waistband or pockets and hiding it in a trash can on the corner. Finding this conduct to be suspicious and consistent with the behavior of people involved in drug activity, Agent Witham stopped the car and went to talk to the other two men while Agent Denham went to look for the defendant. Agent Denham had seen the defendant go down the south side of the residence, so he went around the north side of the residence to cut him off. The defendant was found hiding behind the same set of trash cans in which the officer had seen the defendant hide something earlier. Agent Denham was dressed in a black Shreveport Police shirt and, as soon as he addressed the defendant, the defendant ran away.
Agent Denham chased the defendant on foot and notified Agent Witham that the defendant was running in his direction. As the defendant ran from behind the house, the officers noticed that he was trying to take something out of his pocket. Agent Witham ordered him to stop, and when the defendant did not stop, Agent Witham activated his Taser, which caused the defendant to drop to the ground. As the defendant was falling to the ground, Agents Denham and Witham saw a small package fall away from the defendant. The substance inside the package was later determined to be marijuana. When the defendant resisted Agent Denham's attempt to handcuff him, Agent Witham activated his Taser again on the defendant. After reading the Miranda rights to the defendant, Agent Witham asked the defendant for his name, and he identified himself as "Corey Grant." Agent Denham went to the trash can to see what the defendant had hidden, and he found a .45 caliber semiautomatic pistol.
The defendant testified at trial that he had just purchased the marijuana from the other two men at the corner of Norton and Ester Streets, and he did walk away from them when he saw the police officers. The defendant denied hiding the gun in the trash can and he denied running away or hiding from the police officers. While testifying, the defendant admitted to multiple misdemeanor convictions, a conviction for armed robbery, a conviction for possession of Schedule II CDS, a conviction for possession of Schedule II CDS with intent to distribute, and a conviction for possession of a firearm by a convicted felon.[3] *740 The defendant also admitted that he lied to the police about his name because he was a fugitive at the time, and he admitted to having used aliases in the past.
On July 15, 2005, the defendant was found guilty in a bench trial for possession of Schedule II CDS with intent to distribute and possession of a firearm by a convicted felon (Docket No. 42,189-KA). On October 12, 2005, a jury convicted the defendant of illegal possession of a weapon while in possession of CDS and possession of a firearm by a convicted felon (Docket No. 42,190-KA). On October 13, 2005, the defendant pleaded guilty to illegal use of a weapon during a crime of violence and possession of a firearm by a convicted felon (Docket No. 42,188-KA).
Also on October 13, 2005, the trial court conducted a multiple offender hearing wherein the state presented the bills of information, criminal court minutes, and transcripts of the guilty plea colloquies, wherein the defendant pleaded guilty to armed robbery in 1994 and possession of Schedule II CDS in 1998. The defendant stipulated that the fingerprints on the back of both bills of information were his. At the sentencing hearing on October 19, 2005, the trial court found that the defendant was a third habitual offender with regard to his convictions for illegal use of a weapon during a crime of violence (Docket No. 42,188-KA) and possession of Schedule II CDS with intent to distribute (Docket No. 42,189-KA). The trial court also found that the defendant was a second habitual offender with regard to his conviction for felon in possession of a firearm (Docket No. 42,190-KA).
The trial court subsequently imposed sentence for all of the defendant's convictions. In Docket No. 42,188-KA, the defendant was sentenced to serve 40 years in prison at hard labor without benefit of parole, probation or suspension of sentence for the conviction of illegal use of a firearm during a crime of violence. He was also sentenced to serve 15 years in prison at hard labor without benefit of parole, probation or suspension of sentence for the conviction of possession of a firearm by a convicted felon and was ordered to pay a fine of $1,000.
With regard to Docket No. 42,189-KA, the defendant was sentenced to serve 60 years in prison at hard labor without benefit of parole, probation or suspension of sentence for the conviction of possession of a Schedule II CDS with intent to distribute. For the conviction of possession of a firearm by a convicted felon, the defendant was sentenced to serve 15 years in prison at hard labor without benefit of parole, probation or suspension of sentence.
In Docket No. 42,190-KA, the defendant was sentenced to serve 30 years in prison at hard labor without benefit of parole, probation or suspension of sentence for the conviction of possession of a firearm by a convicted felon. With regard to the conviction for illegal possession of weapons while in possession of a CDS, the defendant was sentenced to serve 10 years in prison at hard labor without benefit of parole, probation or suspension of sentence. The trial court ordered all of the sentences to be served consecutive to each other, but concurrently with a misdemeanor conviction for battery of a police officer in another case.

DISCUSSION
Sufficiency of the Evidence
In his first assignment of error, the defendant contends there was insufficient *741 evidence to prove his guilt of the offenses charged in 42,189-KA and 42,190-KA. Specifically, the defendant argues that the state failed to prove that he knowingly possessed the narcotics and firearms.
The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, reviewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra. In the absence of internal contradictions or irreconcilable conflict with physical evidence, the testimony of one witness is sufficient support for a requisite factual conclusion if that witness is believed by the trier of fact. State v. Jones, 31,613 (La.App. 2d Cir.4/1/99), 733 So.2d 127, writ denied, 99-1185 (La.10/01/99), 748 So.2d 434; State v. Ford, 28,724 (La. App. 2d Cir.10/30/96), 682 So.2d 847, writ denied, 99-0210 (La.5/14/99), 745 So.2d 12.
This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson v. Virginia standard is applicable in cases involving both direct and circumstantial evidence. State v. Owens, 30,903 (La.App. 2d Cir.9/25/98),11 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Barakat, 38,419 (La.App. 2d Cir.6/23/04), 877 So.2d 223; State v. Owens, supra. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Barakat, supra; State v. Anderson, 36,969 (La.App. 2d Cir.4/9/03), 842 So.2d 1222. To convict a defendant based upon circumstantial evidence, it must exclude every *742 reasonable hypothesis of innocence. LSA-R.S. 15:438; State v. Barakat, supra.
Possession of a CDS with intent to distribute and possession of a firearm by a convicted felonDocket No. 42,189-KA
With regard to the convictions for possession with intent to distribute a CDS and possession of a firearm by a convicted felon in Docket No. 42,189-KA, the defendant argues that the state failed to prove that he knowingly possessed the drugs and firearm. According to the defendant, the items were hidden in a vehicle that belonged to his mother, and he was unaware that the contraband was inside of the vehicle.
In order to convict a defendant for possession of a CDS with the intent to distribute pursuant to LSA-R.S. 40:967(A), the state must prove beyond a reasonable doubt that the defendant knowingly and intentionally possessed the CDS and that he did so with the intent to distribute it. State v. Moore, 40,311 (La.App. 2d Cir.1/13/06), 920 So.2d 334, writ denied, 2006-2267 (La.6/1/07), 957 So.2d 167; State v. Clark, 35,272 (La.App. 2d Cir.12/5/01), 803 So.2d 280. The defendant need not be in actual possession of the contraband if the state can prove that he had constructive possession of it, which means that he had knowledge of its presence and "dominion and control" over it. State v. Harris, 94-0970 (La.12/8/94), 647 So.2d 337; State v. Bell, 566 So.2d 959 (La.1990); State v. Barakat, supra.
The mere presence of a person in the place where contraband is found or the mere association with a person possessing contraband is insufficient to establish constructive possession. State v. Harris, supra; State v. Walker, 369 So.2d 1345 (La.1979). The determination of whether a defendant is in constructive possession of contraband depends upon "the peculiar facts of each case":
Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs.
State v. Barakat, 877 So.2d at 227 (internal citation omitted).
In the instant case, Officer Denby testified that he was able to see the plastic bag of marijuana inside the ashtray of the vehicle defendant was driving, and he was able to see the plastic bag of cocaine in the glove compartment as defendant opened it to retrieve the vehicle registration. If Officer Denby was able to see the contraband from outside the vehicle, it can be reasonably inferred that the defendant was aware of the contraband inside the vehicle he was driving. Further, the defendant's actions of crying and giving a false name and date of birth when asked indicate that he had guilty knowledge, which is an essential ingredient of crimes involving possession of contraband and which "must be inferred from the known facts according to reason and common experience." State v. Hill, 38,400 (La.App. 2d Cir.6/23/04), 877 So.2d 173; State v. Manning, 38,083 (La. App. 2d Cir.3/12/04), 868 So.2d 283.
Under the facts of this case, we find that there is no reasonable hypothesis under which the defendant was not aware of the contraband in the vehicle he was driving, especially given the fact that the officer was able to observe the contraband, particularly the marijuana in the ashtray, from outside the vehicle. The testimony established that the contraband was inside the vehicle with the defendant and, thus, within *743 his dominion and control. Accordingly, there was sufficient evidence for a rational factfinder to determine that the defendant was in constructive possession of the marijuana and cocaine.
We must next consider whether there was sufficient evidence of the defendant's intent to distribute the contraband. Specific intent may be inferred from the circumstances surrounding the transactions and the actions of the defendant. State v. Draughn, XXXX-XXXX (La.1/17/07), 950 So.2d 583; State v. Allen, 41,548 (La.App. 2d Cir.11/15/06), 942 So.2d 1244. Specific intent may be established solely by circumstantial evidence if every reasonable hypothesis of innocence is excluded. Id.
In State v. Moore, supra, this court explained how circumstantial evidence may be used to prove that a defendant possessed the intent to distribute a controlled substance:
When the specific intent to distribute a controlled dangerous substance is based on circumstantial evidence, the state must prove the amount of the substance, and/or the manner in which it was carried was inconsistent with personal use. Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute.
The test for determining whether intent to distribute exists includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of the drug such as to create an inference of intent to distribute; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of any paraphernalia, such as Baggies or scales, evidencing an intent to distribute. Testimony of street value and dosage of a drug is also relevant to the issue of intent.
Id. at 339 (internal citations omitted).
Mere possession of contraband does not amount to evidence of intent to distribute "unless the quantity is so large that no other inference is possible." State v. Hearold, supra; State v. Greenway, 422 So.2d 1146 (La.1982); State v. Gibbs, 41,062 (La.App. 2d Cir.6/28/06), 935 So.2d 349. The presence of large sums of cash is also considered circumstantial evidence of the intent to distribute. State v. Johnson, 34,902 (La.App. 2d Cir.9/26/01), 796 So.2d 201, writ denied, 2003-2631 (La.11/8/04), 885 So.2d 1124; State v. Young, 99-1264 (La.App. 1st Cir.3/31/00), 764 So.2d 998.
In the present case, a large sum of money, $2,696, was found in the defendant's pocket. During the search, Officer Denby discovered 19.75 grams of powder cocaine inside the glove compartment, 1 gram of marijuana in the ashtray and a loaded Browning pistol and digital scales underneath the driver's seat. Sergeant Mike Tong, a Shreveport Police Department narcotics supervisor, testified that drug dealers usually have a larger quantity of narcotics with them than drug users because the drug user typically only buys enough to use at one time. Sgt. Tong also testified that the amount of cocaine found in the defendant's possession was enough for 195 dosage units and had a street value of approximately $1,950. Sgt. Tong stated that drug dealers usually have the following items in their possession: large amounts of cash; larger amounts of narcotics that will be repackaged into smaller units for sale; digital scales for measuring the narcotics; and a gun to protect themselves and their contraband. Sgt. Tong opined that based upon his past experience, the evidence of a large amount *744 of cocaine, the large amount of money, the presence of a gun, and the presence of digital scales indicated that the defendant possessed the cocaine with the intent to distribute it.
We find that given the circumstances of the items found on the defendant's person and in his constructive possession, there is no reasonable hypothesis that the possession of the cocaine was for personal use. Thus, the state presented sufficient evidence from which a rational factfinder could determine that the defendant was in constructive possession of a large amount of cocaine and that he had the intent to distribute it. Accordingly, the state presented sufficient evidence to support the defendant's conviction for possession of cocaine with intent to distribute.
Next, we turn to the issue of whether the evidence was sufficient to support the defendant's conviction for possession of a firearm by a convicted felon. In order to present sufficient evidence that the defendant was a convicted felon in possession of a firearm pursuant to LSA-R.S. 14:95.1, the state must prove the following: (1) that the defendant possessed a firearm; (2) that the defendant was previously convicted of an enumerated felony; (3) the absence of the 10-year period of limitation; and (4) general intent to commit the offense. State v. Ball, 99-0428 (La.11/30/99), 756 So.2d 275; State v. Brokenberry, 41,481 (La.App. 2d Cir.11/3/06), 942 So.2d 1209; State v. Qualls, 40,630 (La.App. 2d Cir.1/27/06), 921 So.2d 226.
In this case, during the bench trial, the state presented evidence that the defendant pleaded guilty to armed robbery on October 7, 1994 in First Judicial District Docket No. 168,824 and was sentenced to serve 7½ years in prison. Shreveport Police Officer Tommy Rashal testified that the defendant's fingerprints taken in open court matched the fingerprints on the back of the bill of information in First Judicial District Docket No. 168,824. Thus, the state proved that the defendant had been convicted of a felony as enumerated in LSA-R.S. 14:95.1 and 14:2(13)(jj) and that the 10-year limitation period had not expired.
The general intent to constructively possess a firearm depends upon the facts of the case, and the defendant's guilty knowledge of the gun may be inferred from both direct and circumstantial evidence. State v. Johnson, XXXX-XXXX (La.4/14/04), 870 So.2d 995; State v. Brokenberry, supra. In State v. Brokenberry, supra, this court discussed how constructive possession and general intent could be inferred from the circumstances:
Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. A defendant's dominion and control over a weapon constitutes constructive possession, even if it is only temporary and even if the control is shared. Constructive possession contains an element of awareness or knowledge that the firearm is there and a general intent to possess it. General intent exists when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. Although the existence of intent is a question of fact, it may be inferred from the circumstances of the transaction.
Id. at 1213 (internal citations omitted).
As discussed above, the circumstances of this case indicate that the defendant had the intent to distribute cocaine, and because the firearm was underneath the driver's seat, along with the digital scales, *745 it was within the defendant's dominion and control. Sgt. Tong testified that drug dealers often carry a firearm to protect themselves and their contraband. Also, as discussed previously, defendant's actions of crying and giving a false name and date of birth indicated guilty knowledge. Thus, the state presented ample evidence from which a rational factfinder could determine that the defendant had constructive possession of the firearm. Accordingly, the state presented sufficient evidence to prove that the defendant committed the offense of possession of a firearm by a convicted felon.
Illegal possession of weapons while in possession of CDS and possession of a firearm by a convicted felonDocket No. 42,190-KA
With regard to his convictions for illegal possession of a firearm while in possession of CDS and possession of a firearm by a convicted felon in Docket No. 42,190-KA, the defendant contends the state failed to prove that he possessed the narcotics and the firearm at the same time. He argues that the state failed to exclude the possibility that someone else was responsible for placing the handgun in the trash can.
In order to convict a defendant of illegal possession of a weapon while in possession of CDS pursuant to LSA-R.S. 14:95(E), the state must prove: (1) that the defendant possessed within his immediate control a firearm or other instrumentality customarily intended for use as a dangerous weapon (2) while in possession of, during the sale, or during the distribution of CDS.
In the instant case, Agents Denham and Witham testified that they saw the defendant take something out of his waistband and put it in a trash can just before beginning the pursuit. Upon first activating the taser on defendant, both Agents Denham and Witham observed a small package of marijuana fall away from his body.
In State v. Johnson, 34,902 (La.App. 2d Cir.9/26/01), 796 So.2d 201, writ denied, 2003-2631 (La.11/8/04), 885 So.2d 1124, during a pursuit of three suspects, a police officer saw the defendant throw a "Baggie" on the ground. The Baggie was later recovered and was found to contain crack cocaine. This court rejected the defendant's argument that the Baggie could have been on the ground before he arrived or that one of the other suspects could have thrown it on the ground. This court stated:
[The defendant's] possession of the cocaine was proved by direct evidence with the testimony of Deputy Cornel stating that he saw the Baggie leave Johnson's hand and land on the ground, that he recovered the Baggie from that spot, and that he delivered the Baggie to Sergeant Rehak. Deputy Cornel's testimony that Johnson threw an object as he fled the scene was corroborated by the testimony of the other three agents. There were no internal contradictions or irreconcilable conflicts with the physical evidence. Thus, the testimony of Deputy Cornel alone, which was evidently believed by the jury, was sufficient to support the conclusion that Johnson possessed the Baggie. Also, the testimony of the forensic chemist likewise proved that the substance in the Baggie was, in fact, cocaine.
Id. at 207.
In the instant case, the defendant's claim that someone else could have hidden the firearm in the trash can, such as the other two people seen with him just before the chase, is not reasonable. Both officers saw the defendant place something in the trash can and, when Agent Denham went back to the trash can after subduing the *746 defendant, he retrieved a firearm from that trash can. Further, Agent Witham testified that he was talking to the two other men who were with the defendant before the chase until the defendant ran back towards the front of the house. Thus, it is unreasonable to believe that either of the men would have had time to hide a firearm in the trash can that Agents Denham and Witham had previously seen the defendant place something. Also, due to the close proximity in time between seeing the defendant place the firearm in the trash can and subsequently recovering the marijuana that he dropped, it is reasonable to infer that the defendant was in possession of the firearm while in possession of the marijuana. Accordingly, the state presented sufficient evidence from which a rational jury could determine that the defendant had been in possession of a firearm while in possession of CDS.
Further, the state presented sufficient evidence to show that the defendant was in possession of a firearm and evidence of the defendant's 1994 conviction for armed robbery. Therefore, the state presented sufficient evidence for a rational jury to convict the defendant of possession of a firearm by a convicted felon pursuant to LSA-R.S. 14:95.1.
This assignment is therefore without merit.
Docket No. 42, 189-KAMotion to Suppress
In his next assignment of error, the defendant contends the trial court erred in denying his motion to suppress in Docket No. 42,189-KA. The defendant argues that probable cause to search the vehicle extended only to the ashtray and glove compartment of the vehicle because the initial observation of the police officer and the K-9 alert indicated that contraband was present only in those areas.
The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Similarly, the Louisiana Constitution provides that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." La. Const. art. 1, § 5. A search conducted without a warrant based upon probable cause is per se unreasonable unless the state is able to show that it falls in one of a carefully defined set of exceptions based on the presence of exigent circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Long, 2003-2592 (La.9/9/04), 884 So.2d 1176, fn. 6, cert. denied, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005).
One exception to the warrant requirement is when there is probable cause to search an automobile. The warrantless search of an automobile is not unreasonable if there is probable cause to justify the search, without proving additional exigency, when the automobile is readily mobile because there is an inherent risk of losing evidence. Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); State v. Long, supra. This exception "rests in part on the premise that if the officers may seize a vehicle and immobilize it for however long it takes to secure a warrant they may conduct an immediate search." Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Kelley, XXXX-XXXX (La.7/10/06), 934 So.2d 51, cert. denied, ___ U.S. ___, 127 S.Ct. 691, 166 L.Ed.2d 536 (2006).
Probable cause exists when the facts and circumstances within the arresting *747 officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. LSA-C.Cr.P. art. 213(3); Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Ceaser, XXXX-XXXX (La.10/21/03), 859 So.2d 639; State v. Morris, 38,928 (La.App. 2d Cir.9/22/04), 882 So.2d 1221. An officer observing a driver crossing the center line has probable cause to initiate a traffic stop. State v. Waters, XXXX-XXXX (La.3/12/01), 780 So.2d 1053; State v. Sewell, 40,768 (La.App. 2d Cir.10/20/05), 912 So.2d 719, writ denied, XXXX-XXXX (La.4/17/06), 926 So.2d 522.
In the instant case, Officer Denby conducted a traffic stop on the defendant after observing the vehicle cross the double yellow lines. While asking the defendant to produce his driver's license, proof of insurance and vehicle registration, Officer Denby observed a plastic bag containing a vegetable substance that appeared to be marijuana in the ashtray and a plastic bag containing a white powder substance that appeared to be cocaine in the glove compartment. After observing an open container of alcohol and smelling a strong odor of alcohol on the defendant's breath, Officer Denby placed the defendant under arrest for driving while intoxicated and put him in the patrol car. When Officer Denby retrieved the open container from the vehicle, he testified that it was apparent that the plastic bag in the ashtray contained marijuana. Officer Denby called the K-9 officer to the scene, and the narcotics dog alerted the officers that narcotics were inside the vehicle. Officer Denby then searched the vehicle and recovered the marijuana, cocaine, digital scales, and firearm.
The warrantless seizure of an item that comes within plain view of an officer is justified (1) if the officer was in a legitimate position to view the item, (2) if the item's incriminating character is immediately apparent, and (3) when the officer has a lawful right of access to the object. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); State v. Pigford, 39,306 (La.App. 2d Cir.6/19/06), 935 So.2d 261; State v. Nolen, 29,284 (La. App. 2d Cir.4/4/97), 691 So.2d 379. Law enforcement officers peering into the interior of a vehicle during a legitimate traffic stop are not conducting a search under the Fourth Amendment. State v. Schouest, 351 So.2d 462 (La.1977); State v. Young, 39,546 (La.App. 2d Cir.3/2/05), 895 So.2d 753; State v. Daniels, 614 So.2d 97 (La. App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993).
Further, law enforcement officers have probable cause to conduct a warrantless search of a vehicle after observing narcotics in plain view. State v. Kelley, supra. Once law enforcement officers have probable cause to search a vehicle, they may search the entire vehicle for contraband. State v. Young, supra; see also State v. Brown, 2003-2155 (La.App. 4th Cir.4/14/04), 895 So.2d 542, citing Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); United States v. Ross, supra.
In this case, Officer Denby was in a lawful position when he retrieved the open container and observed the marijuana in plain view; thus, he was justified in conducting a warrantless search of defendant's entire vehicle because he had probable cause to believe the vehicle contained narcotics. Also, Officer Denby's additional use of the narcotics dog provided further probable cause for searching the vehicle without a warrant pursuant to the automobile exception. See, United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); State v. Paggett, 28,843 *748 (La.App. 2d Cir.12/11/96), 684 So.2d 1072.
Additionally, once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment. Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004); State v. Canezaro, 2007-668 (La.6/1/07), 957 So.2d 136; State v. Kelley, supra; State v. Lawrence, 40,278 (La.App. 2d Cir.3/15/06), 925 So.2d 727. Thus, once the defendant was under arrest for driving while intoxicated, Officer Denby was justified in searching the entire vehicle as a search incident to a lawful arrest even though defendant had already left the vehicle. Accordingly, because the officer had probable cause to search the defendant's vehicle without a warrant, the trial court properly denied his motion to suppress. This assignment is therefore without merit.
Docket No. 42,189-KAHabitual Offender Adjudication
The defendant further contends the trial court erred in adjudicating him a habitual offender. He argues that he was not informed during the Boykin hearings when he pleaded guilty to his two prior felony offenses that those convictions could be used to enhance sentences for subsequent felony convictions. In his pro-se assignment of error, defendant argues that the trial court erred in failing to quash the habitual offender bill of information for this same reason and alleges that he would not have pleaded guilty to possession of Schedule II CDS in 1998 had he known that the conviction could be used later to enhance a felony sentence. Defendant also notes that the trial court did not actually find that he was a habitual offender in Docket No. 42,189-KA.
The defendant was convicted at a bench trial in Docket No. 42,189-KA on July 15, 2005, and the state filed a habitual offender bill of information on that same date. At a hearing conducted on August 15, 2005, the defendant stipulated that his fingerprints were on the back of the bills of information in First JDC Docket No. 168,024 (1994 conviction for armed robbery) and First JDC Docket No. 195,404 (1998 conviction for possession of Schedule II CDS). The defendant was convicted at a jury trial in Docket No. 42,190-KA on October 12, 2005, and he pleaded guilty in Docket No. 42,188-KA on October 13, 2005. On October 13, 2005, the state immediately filed a habitual offender bill of information with regard to Docket Nos. 42,188-KA and 42,190-KA, and the defendant waived arraignment and pleaded not guilty. The defendant subsequently stipulated again that his fingerprints were on the back of the bills of information for the 1994 and 1998 convictions.
After hearing arguments with regard to whether the defendant's prior convictions should be used against him due to the fact that the trial courts did not inform him that those convictions could be used to enhance future felony sentences, the trial court found that the defendant was a third habitual offender with regard to Docket No. 42,188-KA (illegal use of a firearm during a crime of violence) and Docket No. 42,189-KA (possession of a Schedule II CDS with intent to distribute). With regard to Docket No. 42,190-KA (possession of a firearm by a convicted felon), the defendant was adjudicated a second felony offender.
In habitual offender proceedings where the defendant denies the prior convictions, the state bears the burden of proving the existence of the prior convictions and that the defendant was the same person who committed those prior *749 offenses. State v. Gray, 41,732 (La.App. 2d Cir.1/10/07), 948 So.2d 335; State v. King, 41,083 (La.App. 2d Cir.6/28/06), 935 So.2d 354, writ denied, XXXX-XXXX (La.4/27/07), 955 So.2d 670. Proving that a defendant is the same person convicted in the earlier offense may be accomplished through different means, including the testimony of witnesses, expert testimony with regard to the fingerprints of the accused when compared to those in the prison record introduced or by photographs contained in the duly authenticated record. State v. Gray, supra.
In the instant case, the defendant admitted that the fingerprints on the back of the bills of information were his; therefore, there was no question as to his identity as the person convicted in those cases. With regard to proving that prior guilty pleas may be used to enhance a felony sentence, the state bears the initial burden of proof:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge must then weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
State v. Shelton, 621 So.2d 769, 779-780 (La.1993)(footnotes omitted); State v. Zeigler, 41,617 (La.App. 2d Cir.12/20/06), 945 So.2d 946.
In the instant case, the state presented certified copies of bills of information, court minutes and transcripts from both prior felony convictions, which reflect that the defendant was represented by counsel when he pleaded guilty in both cases. The defendant's argument that he was not advised in the guilty plea colloquies that those convictions could be used to enhance future felony sentences has been repeatedly rejected by this court.
When LSA-C.Cr.P. art. 556.1 was originally enacted to explain the duties of the trial court when accepting a guilty plea, Subsection E provided:
In any case where a subsequent offense carries an enhanced penalty, the court shall inform the defendant of the penalties for subsequent offenses.
This provision became effective on August 15, 1997. However, in 2001, the legislature amended the article, and the requirement that a defendant be informed of the penalties for subsequent offenses was omitted.[4]
In the instant case, the defendant's 1994 conviction for armed robbery occurred before the requirement to inform defendants of the penalties for subsequent offenses *750 was enacted. Thus, the 1994 conviction was clearly valid for purposes of habitual felony sentence enhancement.
However, at the time the defendant pleaded guilty to possession of Schedule II CDS in 1998, LSA-C.Cr.P art. 556.1(E) required the trial court to inform him of possible future sentence enhancement. Even so, the trial court's failure to inform the defendant does not render the 1998 conviction ineligible for sentence enhancement purposes.
In State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158, the defendant argued that the trial judge committed reversible error when it failed to inform him of the penalties for subsequent DWI offenses, as required by LSA-C.Cr.P. art. 556.1(E). The Supreme Court found that the failure to inform a defendant of the mandatory minimum sentence provided by law and of the penalties for subsequent offenses is subject to the harmless error rule. The Court stated:
First, unlike requirements (1)-(4) contained in La.C.Cr.P. art. 556.1(A) which the judge is directed to give prior to accepting a guilty plea, section (E) simply states that "[i]n any case where a subsequent offense carries an enhanced penalty, the court shall inform the defendant of the penalties for subsequent offenses." Therefore, advice regarding the penalties for subsequent offenses is not even required to be given before the plea is taken. Thus, in addition to the reasons stated below, under the plain language of La.C.Cr.P. art. 556.1, clearly the failure of a trial judge to advise the defendant of the penalties for subsequent offenses under La.C.Cr.P. art. 556.1(E) is not reversible error.
Second, Louisiana's Code of Criminal Procedure contains its own harmless error provision. [LSA-C.Cr.P. art.] 921 provides that "[a] judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused." La. C.Cr.P. art. 921.
* * *
There is no reason to find that the legislature did not intend for this article to apply to the trial judge's failure to inform defendant Guzman of the mandatory minimum sentences or the enhanced penalties for subsequent offenses. This Court has never extended the core Boykin constitutional requirements to include advice with respect to sentencing. State v. Nuccio, 454 So.2d 93, 104 (La. 1984) (holding that the scope of Boykin has not been expanded to include advising the defendant of the possible consequences of his actions or that his conviction may be used as a basis for the filing of a future multiple offender bill).
Id. at 1163-64.
Applying the reasoning in State v. Guzman, supra, to the present case, we find that Article 556.1(E) did not require the trial court to notify the defendant during his 1998 guilty plea colloquy of the possibility of future enhancement before accepting his guilty plea. The transcript of the 1998 guilty plea colloquy indicates that the defendant was informed of the three core Boykin rights, and the failure to comply with Article 556.1(E) did not otherwise render the guilty plea involuntary. Accordingly, the 1998 conviction was valid for purposes of habitual felony sentence enhancement pursuant to LSA-R.S. 15:529.1, and the trial court did not err in adjudicating defendant as a habitual felony offender. This assignment is therefore without merit.
Excessive Sentences
The defendant further contends the sentences imposed are excessive for the offender *751 and the offenses. The defendant argues that his sentences, which amount to being a life sentence, are grossly disproportionate to the individual offenses for which he was convicted and are a needless imposition of pain and suffering. The defendant also argues that maximum sentences are reserved for the most egregious of offender, and his "effective life sentence is longer than if he had committed the most egregious offense of homicide."
The defendant was sentenced on October 19, 2006, and defense counsel did not file a motion to reconsider sentence. When a defendant fails to timely file a LSA-C.Cr.P. art. 881.1, motion to reconsider sentence, the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Jones, 41,449 (La.App. 2d Cir.9/20/06), 940 So.2d 61.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not a rigid or mechanical compliance with its provisions. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.3/01/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385. As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App. 2d Cir.8/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991). The trial court shall exercise its sentencing discretion to impose sentences according to the individualized circumstances of the offense and the offender. State v. Rogers, 405 So.2d 829 (La.1981). A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. *752 Cook, 95-2784 (La.5/31/96), 674 So.2d 957. While given wide discretion to impose sentence within the statutory limits, the sentence imposed by the trial court should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, XXXX-XXXX (La.12/13/04), 893 So.2d 7; State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Cook, supra.
In the instant case, the trial court noted that the defendant was a third felony offender with regard to his convictions for illegal use of a weapon during a crime of violence and possession of Schedule II CDS with intent to distribute and that he was a second felony offender with regard to one of his convictions for possession of a firearm by a convicted felon. The trial court also noted the defendant's age of 30 years and then recounted the facts surrounding each of the defendant's six felony convictions for which he was being sentenced that day. The trial court pointed out that the defendant committed the other four felonies and an additional misdemeanor of battery on a police officer while he was out on bond for illegal use of a weapon during a crime of violence and possession of a firearm by a convicted felon. The trial court noted the facts of the defendant's prior conviction for armed robbery, recalling that the defendant was armed with a firearm when he and two other individuals committed a daytime home invasion, stealing $2,000 and endangering both the adults and children in the home. The presentence investigation report noted that a large amount of powder and crack cocaine was found in the "getaway" vehicle involved in that conviction.
The trial court further observed that while the defendant was on parole supervision for armed robbery, he committed possession of cocaine with intent to distribute. The trial court pointed out that when the defendant was arrested for that offense, he also ran from police and gave false information regarding his name and date of birth. The trial court took note of the defendant's misdemeanor convictions listed in the presentence investigation report, including convictions for simple battery, resisting an officer and attempted escape. The trial court observed that the defendant had not successfully complied with the conditions of supervised probation or parole in his prior convictions, even committing other felonies and misdemeanors while on parole or probation for other offenses.
Additionally, the trial court pointed out the defendant's history of failing to appear in court when ordered to do so, as well as his pattern of behavior involving guns, drugs, giving false names and dates of birth to police and running from the police. The trial court noted that the defendant had a pattern of using aliases and that his tattoos indicated gang membership and glorified violence.
The trial court stated that it had reviewed the defendant's statement in the presentence investigation with regard to how his children and mother needed him for financial and emotional support and how he was a prominent citizen who owned family-oriented businesses. However, the trial court found the statement to be insincere in light of the defendant's extensive criminal history. The trial court also noted that the presentence investigation recommended that defendant receive the maximum sentence.
The trial court stated that it had considered the sentencing guidelines of LSA-C.Cr.P. *753 art. 894.1 in imposing a sentence of incarceration and stated:
I believe that there is an undue risk that during a period of any suspended sentence or probation that he would commit another crime. I really, truly believe based on the pattern here that if Mr. Brown were released today which ain't going to happen, but if he was released today, he'd be committing crimes by the end of the night.
I believe furthermore, under Article 894.1, that he's in need of correctional treatment in a custodial environment that can best be provided by his commitment to the Department of Corrections. I believe that a lesser sentence would deprecate the seriousness of his various, sundry, felony crimes.
I believe after review of Article 894.1 there are far more aggravating circumstances than mitigating circumstances. I believe that he's been given leniency in the past, which obviously was a mistake, but he's been given leniency in the past perhaps due to youth or perhaps due to what he described in one of his trials as being stupid. Nevertheless, he's been given breaks in the past to no avail and he continued in his felony criminal activities. . . .
I believe that Shreveport will be safer as a result of Mr. Brown's being incarcerated.
Thus, a review of the record indicates that the trial court was cognizant of the sentencing considerations of LSA-C.Cr.P. art. 894.1.
In Docket No. 42,188-KA, the trial court found the defendant to be a third habitual offender with regard to his conviction for illegal use of a weapon during a crime of violence and sentenced him to the maximum of 40 years at hard labor without benefit of parole, probation, or suspension of sentence pursuant to LSA-R.S. 14:94(E) and 15:529.1(A)(1)(b)(i). With regard to his conviction for possession of a firearm by a convicted felon, the trial court sentenced the defendant to the maximum of 15 years without benefit of parole, probation or suspension of sentence pursuant to LSA-R.S. 14:95.1. In Docket No. 42,189-KA, the trial court found the defendant to be a third habitual offender upon his conviction for possession of Schedule II CDS with intent to distribute and sentenced him to the maximum of 60 years at hard labor without benefit of probation or suspension of sentence pursuant to LSA-R.S. 40:967(A)(1) and 15:529.1(A)(1)(b)(i). With regard to his conviction for possession of a firearm by a convicted felon, the trial court sentenced the defendant to the maximum of 15 years at hard labor without benefit of parole, probation or suspension of sentence pursuant to LSA-R.S. 14:95.1. In Docket No. 42,190-KA, the trial court found the defendant to be a second felony offender with regard to his conviction for possession of a firearm by a convicted felon and sentenced him to the maximum of 30 years at hard labor without benefit of parole, probation or suspension of sentence pursuant to LSA-R.S. 14:95.1 and 15:529.1(A)(1)(a). With regard to the conviction for illegal possession of weapons while in possession of CDS, the trial court sentenced the defendant to the maximum of 10 years at hard labor without benefit of parole, probation or suspension of sentence pursuant to LSA-R.S. 14:95(E). The trial court ordered that each of these sentences be served consecutively.
Given the defendant's extensive criminal history of felonies and misdemeanors committed over a period of approximately 12 years, which involved crimes of violence and narcotics-related offenses, the presentence investigation characterized the defendant as a "career criminal." Considering the violent nature and individual *754 circumstances of the offenses, as well as the defendant's extensive criminal history, we find that the defendant's maximum sentences are justified. The sentences are not grossly disproportionate to the seriousness of the offenses, nor do they constitute a needless infliction of pain and suffering. In the light of these circumstances, the sentences do not shock the sense of justice. Thus, the trial court did not abuse its discretion, and the sentences are not constitutionally excessive.
Moreover, we do not find any abuse of the trial court's discretion in ordering the sentences to be served consecutively. When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. LSA-C.Cr.P. art. 883; State v. Mack, 37,174 (La.App. 2d Cir.6/27/03), 850 So.2d 1035, writ denied, 2003-2122 (La.1/16/04), 864 So.2d 628; State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993), writ denied, 94-0348 (La.5/20/94), 637 So.2d 476. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Mack, supra; State v. Robinson, 33,921 (La.App. 2d Cir.11/01/00), 770 So.2d 868. All factors in the case are to be considered in choosing whether to impose consecutive or concurrent sentences. State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Mack, supra.
In the instant case, the determination that the sentences on each conviction were to be served consecutively was within the sound discretion of the trial court. Considering the defendant's criminal history and the seriousness of the offenses, these sentences clearly are not excessive. This assignment is therefore without merit.
In a pro se assignment of error, the defendant argues that his 60-year sentence as a third felony offender for possession of CDS with intent to distribute was illegal because he was not adjudicated as a third felony offender at the hearing on August 15, 2005. There is no factual merit to this claim. In Docket No. 42,189-KA, as stated above, the defendant stipulated to the fingerprints on the bills of information in the two prior felony cases. The record indicates that the stipulation was the only substantive portion of the habitual offender proceedings, and, due to confusion over representation of the defendant in other pending matters, the case was continued to another date. At the hearing conducted on October 19, 2005, the trial court formally adjudicated the defendant a third habitual offender with regard to Docket No. 42,188-KA and later noted that it found the defendant to also be a third habitual offender with regard to Docket No. 42,189-KA. Therefore, the defendant's claim that the trial court did not adjudicate him a third habitual felony offender in Docket No. 42,189-KA is without merit.
Double Jeopardy  42,188-KA
In another pro se assignment of error, the defendant argues that his conviction of both illegal use of a weapon during a crime of violence and possession of a firearm by a convicted felon violated his right against double jeopardy because both offenses require proof of the same elements. Although defendant pleaded guilty to both of these offenses in Docket No. 42,188-KA, he preserved this issue for appellate review at the time of his guilty plea pursuant to State v. Crosby, 338 So.2d 584 (La.1976).
*755 The Fifth Amendment to the United States Constitution contains the double jeopardy clause, which provides that no person shall be "subject for the same offenses to be twice put into jeopardy of life or limb." State v. Price, 39,582 (La.App. 2d Cir.3/23/05), 899 So.2d 633; State v. Jacobs, 493 So.2d 766 (La.App. 2d Cir.1986). The double jeopardy clause was made applicable to the states through the Fourteenth Amendment, and Article 1, Section 15 of the 1974 Louisiana Constitution contains a similar guarantee. Id. The guarantee against double jeopardy provides three central constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and, (3) protection against multiple punishments for the same offense. State v. Crandell, XXXX-XXXX (La.3/10/06), 924 So.2d 122; State v. Jefferson, 40,439 (La.App. 2d Cir.1/27/06), 920 So.2d 984.
In the instant case, the defendant argues that he has been subjected to multiple punishments for the same course of conduct. Therefore, the analysis begins with determining whether a single offense or multiple offenses were involved. State v. Price, supra.
To determine whether two offenses are the same for purposes of double jeopardy analysis, Louisiana employs both the "Blockburger test" and the "same evidence test." State v. Knowles, 392 So.2d 651 (La.1980); State v. Price, supra. The "Blockburger test," established by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), states that two offenses are not the same for purposes of double jeopardy if "each crime requires proof of an additional fact which the other does not." State v. Barakat, 38,419 (La. App. 2d Cir.6/23/04), 877 So.2d 223; State v. Blackson, 38,044 (La.App. 2d Cir.1/28/04), 865 So.2d 272.
The "same evidence test" is a much broader test for purposes of double jeopardy:
If the evidence required to support a finding of guilt of one crime would also have supported the conviction of another, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.
* * *
The "same evidence test" is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.
State v. Price, 899 So.2d at 635, quoting State v. Knowles, supra (internal citations omitted).
Illegal use of weapons or dangerous instrumentalities is, inter alia, the intentional or criminally negligent discharging of any firearm where it is foreseeable that it may result in death or great bodily harm to a human being. LSA-R.S. 14:94(A). The sentence for this offense is enhanced when it is committed "while committing . . . a violation of the Uniform Controlled Dangerous Substances Law." LSA-R.S. 14:94(F). Thus, a conviction for illegal use of a weapon during a crime of violence requires proof of the following: (1) that the defendant intentionally, or through criminal negligence, discharged a firearm, (2) that it was foreseeable that it may result in death or great bodily harm to a human being, and (3) that the defendant did so while committing, attempting to commit, conspiring to commit or otherwise trying to get someone else to commit *756 a crime of violence or violation of the Uniform Controlled Dangerous Substances Act.
LSA-R.S. 14:95.1 provides in pertinent part: "It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony . . . to possess a firearm or carry a concealed weapon." Thus, to prove the crime of possession of a weapon by a convicted felon pursuant to LSA-R.S. 14:95.1, the state must prove that the defendant: (1) was convicted of a crime of violence as defined by LSA-R.S. 14:2(13) which is a felony, and (2) possessed a firearm or carried a concealed weapon.
Applying the Blockburger test to these two offenses, it is clear that they are two separate offenses. The offense of illegal use of a weapon during a crime of violence requires additional proof that defendant discharged a firearm, either intentionally or through criminal negligence, under circumstances where it was foreseeable that death or great bodily injury could occur, and that defendant did so while accomplishing or trying to accomplish a crime of violence or a drug offense. The offense of possession of a firearm by a convicted felon requires the additional element that the person committing this offense be a convicted felon. Because each of these offenses requires proof of an additional element not required of the other, the offenses of illegal use of a weapon during a crime of violence and possession of a firearm by a convicted felon are two separate offenses under the Blockburger test.
Also, these are two separate offenses under the "same evidence test" because the evidence necessary to prove the offense of illegal use of a weapon during a crime of violence would not have been sufficient to convict defendant of possession of a firearm by a convicted felon. The state was required to present the additional evidence that defendant had been convicted of a violent felony in order to convict defendant of possession of a firearm by a convicted felon. Likewise, the evidence necessary to prove the offense of possession of a firearm by a convicted felon would not have been sufficient to support a conviction for illegal use of a firearm, as the state was required to show that the defendant discharged a firearm while committing a crime of violence and it was foreseeable that the discharge of the firearm would possibly result in death or great bodily harm to a human being. Thus, the plain language of LSA-R.S. 14:94(F) proscribes behavior above and beyond that of possession of a firearm by a convicted felon as defined by LSA-R.S. 14:95.1. Accordingly, because these are two separate offenses, there was no double jeopardy violation in convicting defendant of illegal use of a weapon during a crime of violence and possession of a firearm by a convicted felon. This assignment lacks merit.
Presumption of Innocence  42,188-KA
In another pro se assignment of error, the defendant argues that being tried simultaneously before a jury for the offenses of illegal use of a weapon during a crime of violence and possession of a firearm by a convicted felon violated principles of due process in that it violated his presumption of innocence before his peers. However, there is no factual basis for this argument because the defendant pleaded guilty to these offenses, and there was no jury that could be improperly swayed by knowledge that the defendant was a convicted felon. Even so, the defendant did not preserve this issue for appellate review pursuant to State v. Crosby, supra, at the time of his guilty plea.[5]
*757 Even if the defendant had preserved the claim, it is without merit. In State v. Pounds, 359 So.2d 150 (La.1978), the Louisiana Supreme Court rejected the argument that allegations contained within the bill of information regarding the defendant's prior convictions deprived him of the presumption of innocence in a prosecution for possession of a firearm by a convicted felon. The Court found that because those prior convictions composed an element of the offense, inclusion of those prior convictions in the bill of information was necessary to inform the accused of the crime for which he was being charged. Similarly, in State v. Willis, 36,759 (La. App. 2d Cir.4/9/03), 843 So.2d 592, writ denied, XXXX-XXXX (La.4/1/05), 897 So.2d 593, this court found that it was permissible for the state to offer proof of the defendant's prior felony convictions before the jury in a prosecution of possession of a firearm by a convicted felon and that it was not prejudicial because it was an element of the offense. Further, the two charges were properly joined because they arose out of the same transaction and were triable by the same mode of trial. LSA-C.Cr.P. art. 493. Therefore, in this case, a trial charging the defendant with both of these offenses would not violate his presumption of innocence because proof of defendant's prior felony conviction was an element of the charged offense.
Presumption of Innocence  42,189-KA
The defendant also contends the trial court erred in allowing the state to prosecute him for both possession of CDS with intent to distribute and possession of a firearm by a convicted felon in the same bill of information because evidence of his prior felony conviction was prejudicial and deprived him of the presumption of innocence. The defendant argues that there are no cases in which a defendant was tried simultaneously for possession of a firearm by a convicted felon and another offense.
For the reasons discussed above, trying a defendant for possession of a firearm by a convicted felon and another offense did not deprive him of the presumption of innocence. Further, contrary to the defendant's claim, there are published opinions showing that others have been simultaneously prosecuted for possession of a firearm by a convicted felon and other offenses. For example, in State v. Qualls, supra, this court affirmed the defendant's convictions of possession of a firearm by a convicted felon and assault by discharge of a firearm. In State v. Willis, supra, this court affirmed the defendant's convictions of both possession of a firearm by a convicted *758 felon and of possession of marijuana with intent to distribute.
The defendant also raises the issue of double jeopardy within this assignment of error. However, because the defendant failed to brief the issue, it is deemed abandoned for purposes of appellate review. See, U.R.C.A. Rule 2-12.4; State v. Wright, 40,945 (La.App. 2d Cir.5/19/06), 931 So.2d 432, writ denied, XXXX-XXXX (La.3/16/07), 952 So.2d 694.
Even so, there is no double jeopardy violation in the present case by trying defendant for possession of CDS with intent to distribute and possession of a firearm by a convicted felon. Under the Blockburger test, these are two separate offenses because each offense requires proof of completely different elements. Further, under the "same evidence test," the evidence necessary to convict the defendant of possession of CDS with intent to distribute would not be sufficient to convict defendant of possession of a firearm by a convicted felon; rather, the state was required to present additional evidence that defendant was a convicted felon. Therefore, these are two separate offenses and convictions for both arising out of the same transaction did not violate defendant's right against double jeopardy. This assignment lacks merit.
Due Process  42,189-KA
In an additional pro se assignment of error, the defendant contends the trial court erred in allowing him to stipulate that his fingerprints were on the back of the bills of information in the prior felony cases, without first having advised him of his right to remain silent.
In State v. Mason, 37,486 (La.App. 2d Cir.12/10/03), 862 So.2d 1077, this court explained that failure to inform a defendant of his rights during the habitual offender proceedings is error patent, but that under certain circumstances the error may be harmless, stating:
Before accepting a defendant's admission that he is a multiple offender, the trial judge must specifically advise the defendant of his right to a formal hearing, his right to require the state to prove his identity as a multiple offender, and his right to remain silent.
A trial court's failure to properly advise a defendant of his rights under the Habitual Offender Law constitutes patent error on the face of the record and requires that the habitual offender's adjudication and sentence be vacated.
* * *
La. R.S. 15:529.1(D)(1)(a) requires that the Defendant be advised of the specific allegations contained in the habitual offender bill of information and his right to a formal hearing at which the State must prove its case. Implicit in this requirement is the additional requirement that the Defendant be advised of his constitutional right to remain silent. Generally, the failure of the trial court to advise the Defendant of his right to a hearing and his right to remain silent is not considered reversible error where the Defendant's habitual offender status is established by competent evidence offered by the State at a hearing rather than by admission of the Defendant. However, when the guilt of the Defendant is proven by his own stipulation or admission to the habitual offender bill of information, without having been informed of his right to a hearing or his right to remain silent by either the trial court or his attorney, there is reversible error.
Id. at 1079-80 (internal citations omitted; emphasis added).
*759 In this case, with regard to Docket No. 42,189-KA, the trial court instructed the defendant on his right to a hearing, but it did not explicitly instruct the defendant on his right to remain silent or his right to require the state to prove his identity as a habitual offender. The trial court came close to addressing the issue of the right to remain silent when he inquired of defense counsel whether he had explained the meaning of a "stipulation" and the legal consequences thereof. Even so, the trial court did not instruct defendant of his rights in the habitual offender proceedings of Docket No. 42,188-KA and Docket No. 42,190-KA. According to State v. Mason, supra, this failure could be harmless error if the defendant's guilt "is established by competent evidence offered by the State at a hearing, rather than by admission of the Defendant."
In this case, the state submitted certified copies of the bills of information, court minutes, and transcripts in both prior convictions for armed robbery and possession of Schedule II CDS. The state was in the process of presenting testimony from an expert in fingerprint analysis at the time defense counsel stipulated that the fingerprints on the back of the bills of information were the defendant's fingerprints.
Moreover, in his jury trial in Docket No. 42,190-KA, the defendant testified during direct examination that he had been convicted of armed robbery in 1994 and of possession of Schedule II CDS in 1998. In State v. Bush, 31,710 (La.App. 2d Cir.2/24/99), 733 So.2d 49, writ denied, XXXX-XXXX (La.9/3/99), 747 So.2d 536, the defendant testified during his trial as to his prior felony convictions, and this testimony was used against him during the habitual felony offender hearing. This court found that the trial court was not required to inform defendant before his trial testimony that it could be used against him later in the habitual offender proceedings.
Under the circumstances of the present case, where the defendant admitted during his trial testimony to the prior convictions and where the state presented certified copies of the bills of information, court minutes, and transcripts corresponding to those prior convictions, there was competent evidence to establish that the defendant was a habitual offender outside of his stipulation. Accordingly, there was competent evidence to establish the defendant's habitual offender status, and the trial court's failure to inform him of his right to remain silent and right to require the state to prove his identity as a habitual offender was harmless error.
Double Jeopardy/Due Process  42,190-KA
In his next pro se assignment of error, the defendant argues that his right against double jeopardy was violated in Docket No. 42,190-KA when he was convicted of illegal carrying of a weapon while in possession of CDS pursuant to LSA-R.S. 14:95(E) and possession of a firearm by a convicted felon pursuant to LSA-R.S. 14:95.1.
In order to convict a defendant of illegal possession of weapons while in possession of CDS pursuant to La. R.S. 14:95(E), the state must prove that (1) defendant possessed within his immediate control a firearm or other instrumentality customarily intended for use as a dangerous weapon and (2) that he did so while in possession of CDS, during the sale of CDS, or during the distribution of CDS. In order to prove the crime of possession of a weapon by a convicted felon pursuant to LSA-R.S. 14:95.1, the state must prove the following: (1) that defendant was convicted of a crime of violence as defined by LSA-R.S. 14:2(13) which is a felony, a violation of the Uniform Controlled Dangerous Substances Act which is a felony, any crime *760 defined as a sex offense in La. R.S. 15:541(14.1), any of the additional eligible crimes listed in La. R.S. 14:95.1(A), any crime in another jurisdiction that would meet the definition of the above-listed offenses if committed within Louisiana, or an attempt of any of the above-listed crimes; and (2) that defendant possessed a firearm or carried a concealed weapon.
Applying the Blockburger test to these two offenses, they are clearly two separate offenses. The offense of illegal carrying of a weapon while in possession of CDS requires additional proof that defendant was in possession of CDS and the offense of possession of a firearm by a convicted felon requires the additional element that defendant had been convicted of an eligible felony. Because each of these offenses requires proof of an additional element not required of the other, the offenses of illegal carrying of a weapon while in possession of CDS and possession of a firearm by a convicted felon are two separate offenses under the Blockburger test.
Additionally, these are two separate offenses under the "same evidence test" because the evidence necessary to prove the offense of illegal carrying of a weapon while in possession of CDS would not have been sufficient to convict defendant of possession of a firearm by a convicted felon. The state was required to present the additional evidence that defendant had been convicted of a violent felony in order to convict defendant of possession of a firearm by a convicted felon. Accordingly, because these are two separate offenses, there was no double jeopardy violation in convicting defendant of illegal carrying of a weapon while in possession of CDS and possession of a firearm by a convicted felon.
Brady Violation/Due Process Violation  42,190-KA
Next, the defendant contends the trial court erred in denying his motion for mistrial based upon the state's display of a photograph of the gun to the jury without first establishing its admissibility under LSA-C.E. art. 104(C). The defendant also alleges that the state's failure to notify him of its intent to show the photograph to the jury violated the "surprise" prohibition contained in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
A review of the record reveals that defense counsel moved for a mistrial based upon the state's display to the jury the photograph of the gun recovered from the trash can. Defense counsel made an objection at the time the photograph was shown during a bench conference, and the issue was revisited during the motion for mistrial. The trial court denied the motion for mistrial, stating:
The objection is noted but overruled. I do not find any negligence on the part of the assistant DA, nor do I find any intentional withholding of any evidence. Certainly this photograph would be consistent with the testimony of the police officers. [Defense counsel] has had access to copies of the reports with respect to the gun and where it was found by the two drug agents. He has had access to examining the gun itself. And therefore I do not believe that there is any basis for the claimed error. And also there is absolutely no basis for a mistrial motion.
In Brady v. Maryland, supra, the United States Supreme Court held that the state must produce evidence that is favorable to the accused and material to issues of guilt or punishment when requested to do so by the defendant. Because the photograph of the gun was not exculpatory and because defendant is arguing that showing the photograph was prejudicial, this issue is not subject to analysis under *761 Brady v. Maryland, supra and its progeny.
Rather, the issue in this case is whether the state violated the rules of discovery. Pretrial discovery procedures were created to eliminate unwarranted prejudice to a defendant that would arise from surprise testimony. State v. Mitchell, 412 So.2d 1042 (La.1982); State v. Smith, 40,894 (La.App. 2d Cir.7/26/06), 936 So.2d 255, writ denied, 2006-2113 (La.3/30/07), 953 So.2d 60. Discovery procedures pertaining to documents and tangible objects are explained in LSA-C.Cr.P. art. 718, which provides, in pertinent part:
Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
* * *
In this case, although the record in 42,190-KA does not contain a motion for discovery filed by the defendant, the record does contain the state's response to a discovery request.[6] Nevertheless, the record indicates that the state provided discovery to the defendant. During arguments with regard to the motion for mistrial, defense counsel acknowledged that he and the assistant district attorney had reviewed the evidence together. The assistant district attorney indicated that he believed that defense counsel had seen the photograph.
Assuming arguendo that defendant did file a discovery motion, and the state failed to provide the photograph to defense counsel, the determination of whether this constitutes reversible error depends on whether the alleged discovery violation was prejudicial. State v. Landrum, 35,053 (La.App. 2d Cir.9/26/01), 796 So.2d 94, writ denied, XXXX-XXXX (La.2/20/04), 866 So.2d 823. Sanctions for failure to comply with discovery motions are solely within the discretion of the trial judge and reversal is warranted only when there is an abuse of discretion and prejudice is shown. State v. Morris, 28,312 (La.App. 2d Cir.8/21/96), 679 So.2d 482. Failure to comply with discovery merits mistrial only when the state's conduct substantially affects the defendant's right to prepare a defense. State v. Hooker, 623 So.2d 178 (La.App. 2d Cir.1993). Mistrial is a drastic measure and is warranted only when substantial prejudice sufficient to deprive defendant of a fair trial will result. State v. Morris, supra. Determining whether such prejudice has resulted is within the sound discretion of the trial judge. Id. It is not mandatory that the trial court declare a mistrial when it is brought to the court's attention that one of the parties has not complied with a discovery request. Id.
Photographs are generally admissible when they illustrate any fact or issue in the case or are relevant to describe the person, place or thing depicted, assuming that their probative value out-weighs *762 any prejudicial effect. LSA-C.E. arts. 401, 403; State v. Wright, supra; State v. Stokes, 26,003 (La.App. 2d Cir.6/22/94), 639 So.2d 395, writ denied, 94-1880 (La.11/11/94), 644 So.2d 387. Further, the trial court's discretion in admitting photographs into evidence will not be disturbed absent an abuse of that discretion. State v. Wright, supra; State v. Hopkins, 39,730 (La.App. 2d Cir.8/17/05), 908 So.2d 1265, writ denied, 2005-2253 (La.3/17/06), 925 So.2d 541.
In this case, we find that the admission of the photograph of the gun was not prejudicial to the defendant. The actual gun that was recovered from the trash can was admitted into evidence, and Agent Witham testified that he photographed the gun in the trash can where it was recovered. The defendant was aware of the evidence of the gun because his counsel had access to inspect both the gun and the police reports explaining how the gun was recovered. Therefore, the photograph of the gun did not surprise the defendant in a way that would create reversible error. The photograph of the gun was relevant to show the jury where the gun was recovered and to corroborate the testimony of Agents Denham and Witham that they observed the defendant put the gun in the trash can. Further, the photograph of the gun was merely cumulative to the other evidence presented. See, LSA-C.E. arts. 401, 403. Accordingly, any failure by the state to provide the photograph of the gun during discovery did not constitute reversible error, and the trial court did not abuse its discretion in denying the defendant's motion for mistrial.
Evidence/Presumption of Innocence  42,190-KA
Next, the defendant argues that the testimony of his parole officer was highly prejudicial and improper because his testimony with regard to the defendant's prior conviction for armed robbery violated his presumption of innocence. The state presented the testimony of Leonard Price, the defendant's parole officer, to confirm the defendant's identity and prior convictions for armed robbery and possession of Schedule II CDS. This testimony was necessary to prove that defendant was guilty of possession of a firearm by a convicted felon. The defendant failed to object to this testimony before the trial court and, thus, is precluded from appellate review of this issue by the contemporaneous objection rule derived from LSA-C.Cr.P. art. 841. Even if the defendant had objected to the parole officer's testimony, there is no merit to this argument because, as discussed previously, it was permissible for the state to offer proof of the defendant's prior felony convictions before the jury in a prosecution of possession of a firearm by a convicted felon because the prior felony convictions were elements of the offense.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences in Docket No. 42,188-KA, Docket No. 42,189-KA and Docket No. 42,190-KA are affirmed. Further, we affirm the defendant's adjudications as a habitual offender in Docket No. 42,188-KA, Docket No. 42,189-KA and Docket No. 42,190-KA.
CONVICTIONS AFFIRMED; ADJUDICATIONS AS A HABITUAL OFFENDER AND SENTENCES AFFIRMED.
NOTES
[1] During the bench trial, the state presented evidence of the defendant's previous conviction for armed robbery and Shreveport Police Officer Tommy Rashal testified that the defendant's fingerprints taken in open court matched the fingerprints on the back of the bill of information in First Judicial District Docket No. 168,824.
[2] During a "corner check," police officers drive by street corners where there have been complaints of drug activity.
[3] The State presented a certified copy of the bill of information, criminal minutes and guilty plea transcript in First Judicial District Court Docket No. 168,824, where the defendant pleaded guilty to armed robbery. Shreveport Police Department Officer Amy Muller testified that the fingerprints of the defendant taken in open court were the same as the fingerprints on the back of the bill of information in Docket No. 168,824.
[4] See, Act 2001, No. 243, § 1.
[5] Although defendant did make a Crosby plea, he only preserved the issue of double jeopardy for appellate review. We recognize that although a valid guilty plea waives appellate review of non-jurisdictional issues, there are some issues for which appellate review is not waived by a valid guilty plea:

[E]ven an unqualified plea of guilty does not preclude review of what are regarded as `jurisdictional' defects  those which, even conceding the accused's factual guilt, do not permit his conviction of the offense charged. These include, for example: the lack of jurisdiction of the sentencing court; the conviction represents double jeopardy; the prosecution, when instituted, had prescribed; the state lacked constitutional or legal power to try the accused for the offense charged; the statute under which the prosecution is brought is unconstitutional; the charge brought in the indictment does not constitute a crime; certain types of patent error preventing conviction for the offense.
State v. Dodson, 942 So.2d at 587-588, quoting State v. Crosby, supra. (internal citations omitted).
Thus, even though the defendant alleged a claim that his constitutional rights were violated, this assignment of error is not properly before this court for appellate review because it was not presented to the trial court and because the alleged constitutional violation was not a jurisdictional defect.
[6] The records in the consolidated cases contain motions for discovery filed on behalf of defendant in Docket Nos. 42,188-KA and 42,189-KA.